IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

ECEIPT LLC,                              §
     *Plaintiff*           §
                       §           **W-19-CV-00032-ADA**
-vs-                                     §
                       §
HOMEGOODS, INC.,                         §
     *Defendant*          §

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

Came on for consideration this date Defendant Homegoods, Inc.'s Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim filed on March 29, 2019. ECF No. 15. Plaintiff, eCeipt LLC filed a response on April 1, 2019, and Defendant filed a reply on April 8, 2019. ECF Nos. 16 & 17.  The Court conducted a hearing on this Motion on May 10, 2019. After considering Defendant's Motion and all relevant filings, the Court **DENIES** the Motion.

### I. Background

Plaintiff has asserted U.S. Patent No. 8,643,875 B2 (the "875 Patent") against Defendant. ECF No. 1, Ex. A. Plaintiff alleges that the '875 Patent issued on February 4, 2014, and that Plaintiff has the right to enforce it. Compl. ¶¶ 9, 17, ECF No. 1. Plaintiff accuses Defendant of direct infringement of claim 1 of the '875 Patent by certain operations of the point-of-sale ("POS") system at retail stores. *Id*. ¶¶ 19–36. Plaintiff specifically alleges that Defendant infringes the '875 Patent "by making, using, importing, offering for sale, and/or selling computer implemented methods for processing receipts that obtain transaction data from a point-of-sale [] computer system at its stores." *Id*. ¶ 20. The Court notes that in this case Plaintiff has not

1

proffered proposed claim constructions as happens in some cases where the Court is asked to decide a similar motion to dismiss. [1]

## II. Legal Standard

### A. Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quotations and citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are "viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005)); *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997) (quoting *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982)); *Altman v. Key Energy Servs., LLC*, No. 2:11-CV-00495-JRG, 2012 WL 4033336, at *2 (E.D. Tex. Sept. 12, 2012). A

---

[1] *Nat. Alternatives Int'l, Inc. v. Creative Compounds, LLC*, 918 F.3d 1338, 1344 (Fed. Cir. 2019), an opinion authored by Judge Moore and joined by Judge Wallach, in which the Federal Circuit held that the factual allegations in the complaint, with all reasonable inferences drawn in favor of the patentee, were enough to plausibly establish eligibility.

claim cannot be dismissed under Rule 12(b)(6) unless the plaintiff "would not be entitled to relief under any set of facts or any possible theory that [it] could prove consistent with the allegations in the complaint." *Muhammad v. Dallas Cnty. Cmty. Supervision & Corrs. Dep't*, 479 F.3d 377, 380 (5th Cir. 2007) (citing *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)); *Altman*, 2012 WL 4033336, at *1. In other words, it must appear beyond doubt that the plaintiff can prove no set of facts in support of their claim entitling them to relief. *Griffith v. Kroger Co.*, No. 9:05-CV-76-TH, 2008 WL 11347989, at *2 (E.D. Tex. Mar. 7, 2008) (citing *Conley v, Gibson*, 355 U.S. 41, 45–46 (1957)).

Nonetheless, the Court is not required to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678. Furthermore, "a plaintiff may plead [him]self out of court" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. Cty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quoting *Warzon v. Drew*, 60 F.3d 1234, 1239 (7th Cir. 1995)).

**B.  The Clear and Convincing Burden of Proof Regarding § 101**

The U.S. Supreme Court ruled in *Commil USA, LLC v. Cisco Systems, Inc.*, that the clear and convincing evidentiary standard applies to all challenges to a patent's validity. 135 S. Ct. 1920, 1928–29 (2015). As such, to support a claim of invalidity, a defendant has the burden to establish all facts "pertinent" to the analysis by clear and convincing evidence. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018); *Harrington Mfg. Co. v. Powell Mfg. Co.*, 815 F.2d 1478, 1482 (Fed. Cir. 1986); *Abbot Labs v. Sandoz, Inc.*, 544 F.3d 1341, 1346 (Fed. Cir. 2008)

("The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity . . . This burden exists at every stage of the litigation."). In this case, the burden rests on Defendant because it is the party asserting invalidity.

### C.  Patent-Eligible Subject Matter Under 35 U.S.C. § 101

Patent eligibility under § 101 is traditionally understood as a "threshold" test: the first of multiple challenges to the sufficiency of a patented invention. *See Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Section 101 of the Patent Act defines patent-eligible subject matter as follows: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent." 35 U.S.C. § 101. The Supreme Court has held that § 101 includes an implicit exception: "Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice*, 573 U.S. at 216 (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)). This exception addresses the concern that a patent could preempt the "basic tools of scientific and technological work" if a patent claimed a law of nature, natural phenomena, or abstract idea. *Id.* However, a court must not over-generalize a patent's claims because "[a]t some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *Id.* at 217 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012)). Thus, the Court "must tread carefully in construing this exclusionary principle lest it swallow all of patent law." *Id.* The Court notes that many of Defendant's arguments would more appropriately be addressed as 35 U.S.C. § 103 obviousness and 35 U.S.C. § 112(f) invalidity arguments. *See Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1352–53 (Fed. Cir. 2016) (Newman, J., concurring) (suggesting that the abstract

idea analysis may be better handled as a patentability analysis under §§ 102, 103, or 112). The Court does not address these arguments at this time.

The Supreme Court has developed a two-part test to distinguish between patents that "claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 573 U.S. at 217. First, a reviewing court "determine[s] whether the claims at issue are directed to a patent-ineligible concept." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016) (quoting *Alice*, 573 U.S. at 218). To make this determination, a court must "articulate what the claims are directed to with enough specificity to ensure the step one inquiry is meaningful." *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1347 (Fed. Cir. 2017). In the step one inquiry, the Court asks, "whether the focus of the claims is on the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Enfish*, 822 F.3d at 1335–36; *Uniloc USA, Inc. v. ADP, LLC*, 279 F. Supp. 3d 736, 741 (E.D. Tex. 2017). As the Supreme Court has cautioned, we must be careful in this analysis as "too broad an interpretation of this exclusionary principle could eviscerate patent law. For all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Mayo*, 566 U.S. at 71.

Second, if the claims are directed to a patent-ineligible concept, the Court then "consider[s] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566 U.S. at 78–79). The additional elements "must be more than 'well-understood, routine, conventional activity.'" *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) (quoting *Mayo*, 566 U.S. at 79). However,

"even if each claim element, by itself, was known in the art, 'an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces.'" *Uniloc USA, Inc. v. Med. Info. Tech., Inc.*, No. 6:16-CV-00463-RWS, 2017 WL 3707439, *2 (E.D. Tex. Mar. 30, 2017) (quoting *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016)).

### III. Analysis

**A. Plaintiff's Asserted Patent Claims Are Not Directed to an Abstract Idea.**

Defendant submits that the '875 Patent claims an abstract idea and contains no inventive concept; therefore, its claims are patent-ineligible. The title of the patent is "Receipt Handling Systems, Print Drivers and Methods Thereof," and the patent describes its purpose as "[to] improve[] systems that avoid[] the waste associated with unwanted receipts, that e-mails a receipt to a customer, that allows a customer to obtain a printed receipt at the store location and that enables marketing capabilities associated with e-mailed receipts and any associated analytics." ECF No. 1, Ex. A at 1:30-35.

Independent claim 1 (the only independent claim)[2] states as follows:

**1.** A method of processing receipts, comprising
[a] obtaining transaction data from a point-of-sale (POS) computer system at a store location, the transaction data including a plurality of categories of information necessary to describe a purchasing transaction of a customer at the store location;

[b] obtaining image data from the POS system at a store location, the image data representing a receipt corresponding to the purchasing transaction of the customer at the store location;

[c] obtaining an e-mail address of the customer from a customer information database persistently associated with the POS system;

---

[2] The Court finds that claim 1 is representative of all claims of the patent for the purposes of this motion; therefore, the Court need only analyze claim 1. *Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324 n.6 (Fed. Cir. 2016).

[d] providing, to a display device at the store location, an option to print the receipt at the store location and an option to e-mail the receipt to the customer;

[e] obtaining a selection of at least one of the provided options;

[f] if the option to print is selected, initiating printing of the image data at the store location; and

[g] if the option to e-mail is selected, e-mailing the receipt to the customer, including:

> [i] providing the e-mail address obtained from the customer information database to a display device at the store location;
>
> [ii] obtaining customer confirmation whether the e-mail address is correct;
>
> [iii] if the e-mail address is not correct, obtaining a corrected e-mail address of the customer;
>
> [iv] transmitting the image data and the transaction data to a server in communication with one or more POS systems at one or more store locations, including generating a data file, the data file including the transaction data, the correct e-mail address of the customer and a file name corresponding to the image data;
>
> [v] assigning an e-mail template based on the data file transmitted to the server; and
>
> [vi] sending an e-mail to the correct customer e-mail address, wherein the content of the email is based on the assigned e-mail template, where the e-mail provides the image data obtained by the server.

*Id.* at 13:49-14:22.

Defendant submits that claim 1's method describes nothing more than generic equipment generically disposed performing the generic steps of obtaining receipt and customer information, asking whether the customer would prefer a printed or emailed receipt, and providing a printed or emailed receipt in response. Therefore, Defendant argues that claim 1 (and all the remaining claims) claims an abstract idea and fails step one of the *Alice* test.

Plaintiff responds that the '875 Patent claims are directed to a specific computer-centric problem of receipt handling systems for POS computer systems and provides a solution comprised of ordered steps. The Court finds that the '875 Patent describes the problems associated with the prior art and that the claims describe an approach that accomplishes a specific, practical, and useful improvement to the existing POS computer-aided processes. Thus, the claims are not abstract, and they patent-eligible subject matter.

"The abstract idea exception prevents patenting a result where 'it matters not by what process or machinery the result is accomplished.'" *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1312 (Fed. Cir. 2016) (quoting *O'Reilly v. Morse*, 56 U.S. 62, 113 (1854)).The Court is mindful that it "'must be careful to avoid oversimplifying the claims' by looking at them generally and failing to account for the specific requirements of the claims." *Id.* at 1313 (quoting *In re TLI Communications LLC Patent Litig*., 823 F.3d 607, 611 (Fed. Cir. 2016)). Thus, "a court must look to the claims as an ordered combination, without ignoring the requirements of the individual steps," and determine "whether the claims in these patents focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *Id.* at 1313–14; *see also Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1258–59 (Fed. Cir. 2017) ("[W]e must articulate with specificity what the claims are directed to, and 'ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea.'"); *Data Engine Technologies LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018) (practical application of tabs for navigating through a three-dimensional spreadsheet not directed to abstract idea); *Ancora Technologies, Inc. v. HTC America, Inc.*, 908 F.3d 1343 (Fed. Cir. 2018) (using conventional bios memory to provide improved security not

directed to an abstract idea); *SRI Int'l., Inc. v. Cisco Sys., Inc.*, 918 F.3d 1368 (Fed. Cir. 2019) (monitoring computer network traffic to detect suspicious activity not directed to an abstract idea). During this first step, it is crucial to "articulate what the claims are directed to with enough specificity to ensure the step one inquiry is meaningful," because all patents "embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Thales*, 850 F.3d at 1347; *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566 U.S. at 71).

Given that it is considering a motion to dismiss, the Court reviews both the '875 Patent and the Complaint to determine whether or not the Plaintiff has articulated a claim that would survive challenge under § 101. In the Complaint, Plaintiff has written that the '875 Patent describes problems and needs with prior POS systems. Compl. ¶ 10; ECF No. 1, Ex. A at 1:15-35. A POS system is what a cashier uses to handle a transaction. ECF No. 1, Ex. A at 3:58-61, 3:61-4:17. To solve the need for improved systems, the inventors of the '875 Patent had to create a method for a POS system to use, and the method had to be able to be implemented on various existing POS systems. *Id.* at 4:19-22. Plaintiff argues at this preliminary stage that the inventors had to devise a receipt handling system that could be used with existing POS systems to technologically improve them and obviate their shortcomings.

The Court turns to the language of claim 1, which provides a series of specific steps that creates a practical improvement to the operation and functionality of prior POS systems. *Id.* at 13:49-14:21. The specification explains what is entailed in each of these steps. For example, "[a]fter items to be purchased are scanned, or otherwise entered, into the POS system [], an image of a receipt corresponding to the purchased goods or services is captured." *Id.* at 4:29-31. If the customer selects to the have the receipt emailed, "transaction data may be obtained from the POS system and/or the customer information database to create a data file. The data file may

also be, for example, an XML file." *Id.* at 4:52-55. Included in the data file may be the customer's e-mail address, image file name, and transaction information obtained from the POS system or customer system database. *Id.* at 4:55-58. "The data file and image or image file" may then be sent to an onsite server. *Id.* at 4:58-60. "The data file may then be used to create an e-mail template that is e-mailed to the customer along with the image file containing the image of the receipt." *Id.* at 4:60-62, 5:33-50, 5:53-6:3, 6:11-42, 11:4-6, 11:10-12, 11:28-13:39.

In *Enfish*, the Federal Circuit reversed the lower court and found that two software-related patents were "directed to an innovative logical model for a computer database" and therefore were patent eligible under 35 U.S.C. § 101. 822 F.3d at 1330. The Court specifically found that the claims at issue were "directed to a specific improvement in the way computers operate . . . ." *Id.* at 1336. Similarly, this Court finds that Plaintiff's claims are not directed to an abstract idea within the meaning of *Alice* because the claims are directed to a specific improvement in the way computers—POS systems—are able to process receipts that was not available in the prior art. Like the claims in *Enfish*, "the plain focus of the claim[] is on an improvement to computer functionality itself, not on economic or other tasks for which a computer is used in its ordinary capacity." 822 F.3d at 1336. Because of the foregoing, the Court finds that the asserted claims of the '875 Patent are not directed to an abstract idea.

The Court finds that a closely comparable case to the present case is *Finjan, Inc. v. Blue Coat Systems, Inc.*, 879 F.3d 1299 (Fed. Cir. 2018). In *Finjan*, the court addressed a claimed invention involving a method of virus scanning that scanned an application program, generated a security profile identifying any potentially suspicious code in the program, and linked the security profile to the application program. *Id.* at 1304–05. The court held that the claims were patent eligible because the court concluded that the claimed method recited specific steps that

10

realized an improvement in computer functionality. *Id.* at 1305–06. The court found that the technique for virus scanning claimed in the case constituted an improvement in computer functionality and therefore included an inventive step. *Id.* The court focused on the fact that the claims were not merely focusing on a desired result, but instead recited specific steps that accomplished the result. *Id.* The Court finds that Plaintiff has articulated that the '875 Patent provides a similar improvement.

For the above reasons, the Court holds that the asserted claims of the '875 Patent are not directed to an abstract idea.

### B. The Asserted Claims of the '875 Patent Transform any Potential Abstract Idea into a Patent-Eligible Invention.

The Court now turns to the second step of the § 101 analysis with respect to the '875 Patent. Step two requires the Court to "search for an inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 217–18 (quotation and brackets omitted).  Even if the Court were to conclude that the asserted claims of the '875 Patent were directed to an abstract idea, the Court finds there are "additional elements [that] 'transform the nature of the claim' into a patent-eligible application." *Id.* at 217 (quoting *Mayo*, 566 U.S. at 78–79).

Defendant argues that the asserted claims are too generic and broad to be patent eligible. Defendant submits that in the analysis of this step, the patentee must do more than point to an abstract idea and tell the reader to "apply it." Similarly, Defendant argues that the mere addition of generic computer equipment is insufficient. Defendant contends that there is no inventive concept claimed in the '875 Patent. Defendant argues that the POS equipment and functions are described in wholly generic terms. Furthermore, Defendant submits that the '875 Patent does not

11

disclose or require special-purpose computing equipment in either the claim or in the specification because the text merely speaks broadly of generic computer equipment generically configured. According to Defendant, the components of a POS system are inadequately disclosed because the '875 Patent discusses them largely by way of background, first describing a "basic POS system" and then a "more complex POS system." ECF No. 1, Ex A. at 3:61-66. Furthermore, these POS systems are types that already exist in the retail world and in the prior art. Defendant argues that the patentee identified the hardware of such a POS system only in a non-exhaustive list that includes "a display screen for the clerk, a customer display, a cash drawer, a credit card swiping system, a printer, bar code scanner, computer, or laptop." *Id.* at 3:66-4:2. Defendant also argues that the invention apparently "engage[s] with various existing POS systems," and not any specific one of them specifically disposed. *Id.* at 4:19-23.

Plaintiff responds that the asserted claims recite an inventive concept because they provide a limited and specific solution to a technology-related problem. Plaintiff further argues that Defendant fails to meet its burden to prove that the asserted claims are routine, conventional, and well-known.

With respect to the Court's analysis under step two of *Alice*, the Court finds that the '875 Patent claims each contain an inventive concept and Defendant's arguments to the contrary, at best, raise disputed issues of material fact, which, according to *Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018), and *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018), preclude granting the Motion. In addition, the Court finds that the '875 Patent claims provide a specific technological way of processing receipts that enables the customer to enter their email information; have email information from previous transactions fetched; and have the receipt printed in store, e-mailed to the customer, or both printed in the store and e-

12

mailed. The email includes a populated image that comes from image data generated at the POS terminal. In sum, the Court finds that the '875 Patent contains "specific technologic modifications to solve a problem or improve the functioning of a known system," and therefore produces patent-eligible subject matter. *Trading Techs. Int'l Inc. v. CQG, Inc.*, 675 F. App'x. 1001, 1004–05 (Fed. Cir. 2017).

In addition, "whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact. Any fact, such as this one, that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence." *Berkheimer*, 881 F.3d at 1368. Furthermore, this "question cannot be answered adversely to the patentee based on [] sources properly considered on a motion to dismiss, such as the complaint, the patent, and materials subject to judicial notice." *Aatrix*, 882 F.3d at 1128. Accordingly, an adverse judgment against the patentee is improper when no factual evidence is provided for "whether the claimed invention is well-understood, routine, and conventional." *Berkheimer*, 881 F.3d at 1368.

The Court finds that at the motion to dismiss stage, Defendant has not provided evidence in its Alice step two argument that the claimed way the POS system operates is routine or conventional. *See McRO, Inc.*, 837 F.3d at 1314 ("While the rules are embodied in computer software that is processed by general-purpose computers, Defendants provided no evidence that the process previously used by animators is the same as the process required by the claims."). Defendant's Motion is to be decided based on the record evidence, which lies in the four corners of the Complaint and its exhibits, and the record evidence clearly establishes problems of the prior art and the '875 Patent's claimed invention's manner of solving those problems. Accordingly, even if the Court agreed with Defendant that the asserted claims were directed to

an abstract idea, the Court finds that the asserted claims remain patent eligible under step two of the *Alice* test.

### IV. Conclusion

Because the Court does not find that the asserted claims of the '875 Patent are directed to patent-ineligible subject matter under 35 U.S.C. § 101, Plaintiff's Complaint states plausible claims for relief. Accordingly, the Court **DENIES** Defendant's Motion to Dismiss.

**SIGNED** this 20th day of May, 2019.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

14